AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

**DISTRICT OF DELAWARE**

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

PNC Bank - Fox Run Shopping Center, Safety Deposit Box ▇▇▇0084

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

CASE NUMBER: 07- 201 M

I, _____Steven Murphy_____, being duly sworn depose and say: I am a(n) Special Agent, Drug Enforcement Administration and have reason to believe that ____ on the person of or _x_ on the property or premises known as (name, description and/or location)

See Attachment A, which is incorporated herein by reference,

in the _____ District of _____Delaware_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B, which is incorporated herein by reference,

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rule of Criminal Procedure)

property that constitutes evidence of the commission of a criminal offense, the fruits of crime and things criminally possessed and property designed and intended for use and which has been used as a means of committing a criminal offense.

The facts to support a finding of Probable Cause are as follows:

See attached affidavit, which is incorporated herein by reference.

Continued on the attached sheets and made a part hereof.   _X_ Yes   ___ No

_____
Signature of Affiant
Special Agent   Steven Murphy

Sworn to before me, and subscribed in my presence
**October 22, 2007**                                                    at   _____Wilmington, Delaware_____
Date                                                                                    City and State
Honorable Leonard P. Stark
United States Magistrate Judge
District of Delaware                                                           _____
Name and Title of Judicial Officer                                   Signature of Judicial Officer

## AFFIDAVIT

I, Steven Murphy, Special Agent, Drug Enforcement Administration, being duly sworn according to law, depose and state as follows:

## AFFIANT'S BACKGROUND

I am aSpecial Agent with the Drug Enforcement Administration (DEA) and have been so employed since September 2001 and have been assigned to the DEA Wilmington Resident Office since August of 2007. Prior to my assignment to the Wilmington Resident Office, I was assigned to the DEA Philadelphia Division, Enforcement Group #2 from January of 2002 until August of 2007. Prior to my employment with the DEA, I was a Police Officer with the City of Wilmington, Delaware Police Department.

I have specialized training and experience in narcotics smuggling and distribution investigations, including but not limited to, the means and methods used by traffickers to import and distribute narcotics, interdiction, smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. I have participated in numerous drug investigations, debriefed or participated in debriefings of numerous defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations, and have participated in all aspects of drug investigations including conducting surveillance, analyzing information obtained from court-ordered pen register and trap and trace intercepts, and analyzing telephone toll information obtained as a result of subpoenas issued by the DEA. I have also assisted in numerous wiretap investigations. I am aware that drug traffickers commonly use cellular telephones and pagers in furtherance of their drug trafficking activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection.

The information within this Affidavit is based upon my personal knowledge and observations, as well as information supplied to me by other City of Wilmington Police Officers, including Detective Todd Riley.

Based upon the collective training and experience of both your Affiant and participating Officers, your Affiant knows and therefore avers:

    a.    that narcotics traffickers often keep on hand currency in order to maintain and finance their ongoing narcotics business;

    b.    that narcotics traffickers commonly maintain in their possession, or on their persons, firearms and other weapons which they use to protect and secure their product and proceeds from their trafficking;

    c.    that it is common for narcotics traffickers to secrete contraband, proceeds of narcotics sales, and records of narcotics transactions in safes and secur

1

locations within their residences, or those of their friends and/or associates, their businesses and/or other locations over which they maintain dominion and control for ready access and to conceal them from law enforcement authorities;

d. that it is common for persons involved in narcotics trafficking to maintain evidence pertaining to obtaining, secreting, transferring, concealing and or expending narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, and other items of value and/or proceeds of drug transactions, as well as books, records, invoices, receipts, records of real estate transactions, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations over which they maintain dominion and control;

e. that narcotics traffickers commonly maintain addresses and/or pager and/or telephone numbers in books or papers which reflect the names, addresses and/or pager and/or telephone numbers of their associates in their trafficking activities;

f. that narcotics traffickers commonly communicate with their sources of supply, customers and associates via pager and/or cellular telephone;

g. that narcotics traffickers take or cause to be taken photographs of themselves, their associates, their possessions and their product, and that such photographs are usually maintained in their possession or in their residences;

h. that courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, including narcotics trafficking;

i. that narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation, ordering, sale and distribution of controlled substances, and that these documents and records are maintained where the traffickers have ready access to them;

j. that drug traffickers often place assets in the names of corporate entities in order to avoid detection of those assets by law enforcement agencies;

k. that even though assets are in other person's names, the drug traffickers continue to use these assets and exercise dominion and control over them;

l. that drug traffickers may use the internet through their personal computers or hand-held wireless devices to communicate with other traffickers,

2

suppliers, customers, and to order packaging materials and paraphernalia; and

m. that drug traffickers may use facsimile machines to place or receive orders from customers and suppliers and to order organic and packaging materials for the drug activities.

### SAFE DEPOSIT BOXES TO BE SEARCHED AND ITEMS TO BE SEIZED

Your Affiant believes, and therefore avers, that probable cause exists to believe that evidence of drug trafficking (that is, documents, US Currency and other fruits and instrumentalities), in violation of Title 21, United States Code, Sections 846 and 841(a)(1)(conspiracy to distribute controlled substances and distribution of controlled substances), is present at PNC Bank –Fox Run Shopping Center, 250 Fox Hunt Drive, Bear, Delaware, 19707, Safety Deposit Box 0084 and PNC Bank – Eden Square, 100 Eden Circle, Bear, Delaware, 19701, Safety Deposit Box 0108; therefore probable cause exists for the search of these Safety Deposit Boxes, as more particularly described in Attachment A. By this application, your Affiant is requesting authority to search the subject premise for the items set forth and described in Attachment B and for authority to seize such items.

### BASIS OF PROBABLE CAUSE

I am the case agent responsible for the investigation involving the foregoing offenses, in aid of which this application is being made. This Affidavit is based upon my own personal knowledge as well as information provided to me by other law enforcement officers. Because this Affidavit is solely for the purpose of establishing probable cause, not all facts relating to the investigation are included herein.

### BACKGROUND OF INVESTIGATION

Your affiant can truly state that since January 2007 the City of Wilmington Police Department, Drug, Vice, and Organized Crime Unit have been conducting an investigation into the Manuel MEDLEY Drug Trafficking Organization (DTO). Based on information obtained from a past-proven reliable confidential informant, physical surveillance, and controlled purchases of cocaine, detectives applied for and received authorization to execute two (2) Justice of the Peace Court #20 search warrant's at the following locations; MEDLEY'S residence located at ███ and ███ a location used by the MEDLEY DTO to store large quantities of drugs. On October 19, 2007, law enforcement authorities executed the search warrants and seized approximately $9,000 United States Currency in suspected drug proceeds from ███ nd 92.2 grams of crack cocaine and two (2) firearms from ███ Prior to searching the ███ stated that "Manny" used that apartment.

3

Manuel Medley was arrested and taken into custody at ▮▮▮▮▮▮▮▮▮▮ address without incident. At that location, on the dining room table, was recovered a set of keys to a silver Infiniti Q45 bearing Delaware registration number ▮▮▮▮. Manuel Medley has been seen by members of law enforcement driving this vehicle on multiple occasions over an eight month period. MEDLEY's wife, Melvina BELL-MEDLEY, also stated that this vehicle is his primary form of transportation and the only car he has. On this keychain were two keys: one was found to open the address at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the other was found to open the safe at this address, in which one of the firearms described above was located.

On October 19, 2007, Detective Riley of the Wilmington Police Department interviewed MEDLEY who stated that he is unemployed and has no legitimate means of income. Further, this same date, MEDLEY'S wife, Melvina BELL MEDLEY, advised Detective Riley she had opened a safety deposit box at a PNC Bank in Eden Square Shopping Center for Manuel MEDLEY, but she had never gone back to it because she was afraid of what might be inside. She further explained that she knew Manuel MEDLEY was heavily involved in illegal drug trafficking and that the box may contain drugs or drug proceeds.

Based on the information obtained in the interviews of Manuel MEDLEY and Melvina BELL MEDLEY, a DEA administrative subpoena was served on an employee of PNC Bank. Employee advised that there were two (2) safety deposit boxes in the names of Manuel MEDLEY and Melvina BELL-MEDLEY and provided the following locations of the safety deposit boxes; PNC Bank – Fox Run Shopping Center, 250 Fox Hunt Drive, Bear, Delaware, 19707, Safety Deposit Box ▮▮▮▮84 and PNC Bank – Eden Square, 100 Eden Circle, Bear, Delaware, 19701, Safety Deposit Box ▮▮▮▮0108.

Based on your affiants training and experience, it is common for large-scale drug traffickers to store drug proceeds and firearms, drug ledgers, and other types of documents demonstrating unexplained wealth inside of safe deposit boxes in order to evade detection by law enforcement authorities. Further, your affiant believes that MEDLEY is storing his drug proceeds as well as other documents pertaining to his drug trafficking organization in the indentified PNC Bank safe deposit boxes.

## CONCLUSION

Based on the information in the foregoing paragraphs, your Affiant has probable cause to believe that the safety deposit boxes located at PNC Bank – Fox Run Shopping Center, 250 Fox Hunt Drive, Bear, Delaware, 19707, Safety Deposit Box ▮▮▮▮00084 and PNC Bank – Eden Square, 100 Eden Circle, Bear, Delaware, 19701, Safety Deposit Box ▮▮▮▮0108, as more fully described in Attachment A, are presently being used to store or maintain the following items described below in relation to and in furtherance of violations of Title 21, United States Code, Sections 846 and 841(a)(1): documents which represent cash income and cash disbursements of proceeds from the distribution of cocaine and crack-cocaine, US Currency, documents relating to buyers of cocaine and crack-cocaine, such as telephone lists and drug ledgers, as well as other documents related to these offenses and firearms, as more particularly and fully described in Attachment B. WHEREFORE, by this application, your Affiant is requesting authority to search the subject safe deposit boxes described in Attachment A for the items set forth and

described in Attachment B and for the authority to seize such items.

Your Affiant, having signed this Affidavit under oath as to all assertions and allegations contained herein, states that its contents are true and correct to the best of his knowledge, information and belief.

> STEVEN MURPHY
> *Special Agent,*
> *Drug Enforcement Administration*

Sworn to and subscribed before me this 22nd day of October, 2007.

**UNITED STATES MAGISTRATE JUDGE**

5

# ATTACHMENT A

*DESCRIPTION OF SAFE DEPOSIT BOXES TO BE SEARCHED*

PNC Bank –Fox Run Shopping Center, 250 Fox Hunt Drive, Bear, Delaware, 19707, Safety Deposit Box ████ ████0084 and PNC Bank – Eden Square, 100 Eden Circle, Bear, Delaware, 19701, Safety Deposit Box ████ ████0108

## ATTACHMENT B

PROPERTY TO BE SEIZED AT PNC BANK –Fox Run Shopping Center, 250 Fox Hunt Drive, Bear, Delaware, 19707, Safety Deposit Box ▮▮▮▮0084 and PNC BANK – Eden Square, 100 Eden Circle, Bear, Delaware, 19701, Safety Deposit Box ▮▮▮▮0108

1. Drug Paraphernalia, including but not limited to: cutting agents for controlled substances, grinders, scales, ink pads, stamps, razor blades, mirrors, vials, glassine bags, wax paper bags, plastic bags and any other items used to facilitate the packaging and distribution of controlled substances;

2. Papers, tickets, notes, receipts, and other items relating to domestic and international travel;

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, and cashier's checks, bank checks, safe deposit keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer/concealment and/or expenditure of money;

4. Records pertaining to the purchasing and sale of narcotics; and books, records, receipts, notes, ledgers, money orders and other documents and papers reflecting the acquisition, transportation, disposition and distribution of narcotics;

5. United States currency, financial instruments, precious metals, jewelry, other items of value, and proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from drug trafficking activities;

6. Address and/or telephone books, Rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of customers, sources of supply, financial institutions, and other individuals whom "business" relationships exist;

7. Firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons, and any records or receipts pertaining to firearms and ammunition;

8. Photographs, including still photos, negatives, videotapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, assets and/or controlled substances.